ACCEPTED
12-14-00260-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/19/2015 1:00:24 PM
CATHY LUSK
CLERK

## NO. 12-14-00260-CV

## IN THE COURT OF APPEALS FOR
## THE TWELFTH DISTRICT OF TEXAS
## AT TYLER

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
1/19/2015 1:00:24 PM
CATHY S. LUSK
Clerk

Nac Tex Hotel Co., Inc., *Appellant,*

v.

Stephen Greak, Dee Winston, and E&G Investments, *Appellees.*

Appeal from the 159th Judicial District Court of Angelina County, Texas
The Honorable Paul White presiding
Trial Court Cause No. CV-01824-12-10

## BRIEF OF APPELLEES
## STEPHEN GREAK, DEE WINSTON, AND E&G INVESTMENTS

Jimmy A. Cassels, SBN 03978200
Cassels & Reynolds, L.L.P.
117 E. Lufkin Ave.
P.O. Box 1626
Lufkin, Texas 75902-1626
(936) 634-8466; (936) 639-1939 facsimile
jacassels@consolidated.net

ATTORNEY FOR APPELLEES

**ORAL ARGUMENT REQUESTED**

Brief of Appellees i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... ii, iii

TABLE OF AUTHORITIES ................................................................................ iv

STATUTES ........................................................................................................ v

STATEMENT OF THE CASE ............................................................................ 1

STATEMENT OF FACTS ................................................................................. 2

SUMMARY OF THE ARGUMENT ................................................................... 9

ARGUMENT AND AUTHORITIES ................................................................. 10

I.      The district court did not err in rendering judgment in Defendants' favor on the jury finding that Plaintiff did not adversely possess the Property for a period of ten (10) or twenty-five (25) years ........................................................... 11

        A.      The jury considered substantial evidence that Plaintiff's claim to the Property was neither exclusive nor hostile ........................................ 11

        B.      The jury considered evidence Plaintiff lacked the intent to claim the Property as its own ........................................................................ 14

        C.      The jury considered evidence that Plaintiff and Tem-Kil, Inc., never paid property taxes on the Property ........................................................ 16

II.     The district court did not err in rendering judgment for Defendants on the jury finding that Plaintiff filed the lawsuit in bad faith .................................... 16

III.    The district court did not err in rendering judgment for Defendants on the jury finding that Defendants are entitled to an award of attorney's fees under TCPRC § 16.034 ............................................................................................. 18

CONCLUSION AND PRAYER ........................................................................ 20

CERTIFICATE OF SERVICE ......................................................................... 22

CERTIFICATE OF COMPLIANCE.................................................................22

# TABLE OF AUTHORITIES

## Cases

Blaylock v. Holland,
   396 S.W.3d 720 (Tex. App.—Dallas 2013, no pet.)....................................12

Brooks v. Jones,
   578 S.W.2d 669 (Tex. 1979)...........................................................12, 13

City of Keller v. Wilson,
   168 S.W.3d 802 (Tex. 2005)........................................................11, 16, 21

Davis v. Breithaupt,
   400 S.W.2d 390 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.)...............14, 15

Davis v. Carriker,
   536 S.W.2d 246 (Tex. Civ. App.—Amarillo 1976, writ ref'd n.r.e.)...........12, 16

Dow Chem. Co. v. Francis,
   46 S.W.3d 237 (Tex. 2001)........................................................10, 19, 21

Kleckner v. McClure,
   524 S.W.2d 608 (Tex. Civ. App.—Fort Worth 1975, no writ)...............12, 13, 14

McNeely v. Southwestern Settlement & Dev. Corp.,
   282 S.W.2d 932 (Tex. Civ. App.—Beaumont 1955, no writ)........................12

Mendoza v. Fidelity & Guaranty Ins.,
   606 S.W.2d 692 (Tex. 1980).........................................................14, 15

Tran v. Macha,
   213 S.W.3d 913 (Tex. 2006)..............................................................12

Walker & Assocs. Surveying, Inc. v. Austin,
   301 S.W.3d 909 (Tex.App.—Texarkana 2009, no pet.)...............................16

## Statutes

Texas Civil Practice and Remedies Code § 16.021 (Vernon 2014)...........9, 11, 19

Texas Civil Practice and Remedies Code § 16.034 (Vernon 2014).10, 18, 19, 20, 21

# TO THE HONORABLE COURT OF APPEALS FOR THE TWELFTH JUDICIAL DISTRICT OF TEXAS

Appellees Stephen Greak, Dee Winston, and E&G Investments, GP, (hereinafter sometimes referred to as the Defendants), submit this their Appellees' Brief and in support thereof would show the Court as follows:

## STATEMENT OF THE CASE

Appellee acknowledges Appellant's contention that this is an adverse possession case. The disputed land started as a small triangular shaped piece of land in Plaintiff's original petition which grew to a four sided shape containing .054 acres/2,352 sq. feet on the eve of the trial (Supp. RR. Vol. 1 P. 116).

Appellee disputes Appellant's erroneous contention that the disputed land lies between the Kentucky Fried Chicken store and the Valero gas station. The disputed land does not at any place or in any way border or touch the Valero gasoline station property. It borders other land owned by Defendants on two sides and by Plaintiff on one side (CR P. 108).

Appellee agrees that the jury awarded attorney's fees to the Defendants and that the judgment was signed on June 23, 2014. That judgment does in fact include a finding that Plaintiff's claims for adverse possession were groundless and made in bad faith (CR P. 79).

# STATEMENT OF FACTS

The tract of land at issue in this dispute is a .054 acre parcel (the "Property") which is on the boundary between Plaintiff and Defendants' land (CR P. 108). The appellant has ample land in its .411 acres to conduct its business and in fact has done so for over forty (40) years without taking Defendant's property (CR P. 108).

Contrary to Appellant's statement, the Valero gas line station located at the intersection of Chestnut Street and Timberland Drive in Lufkin, Texas does not border, touch or come in contact with the disputed property in any way (CR P. 108; Defendant's Exhibit 1, CR P. 118).

The KFC Store property (contrary to Appellant's assertion) has not <u>always</u> been owned by a Dewitt family member. While that statement is true as to the franchise the KFC store and premises are located on .411 acres which was leased by Tem-Kil from T&T Corporation for some 15 years before it was purchased from T&T Corporation in 1981 (CR P. 126; Supp. RR Vol. 1 P. 172 L. 1-7).

During the 1981 purchase, Tem-Kil also acquired a right of way easement (which neither Ms. Dewitt nor Ms. Parmalee knew about) to be used in common with T&T which owned the land over which the easement was granted (Supp. RR Vol. 1 P. 176). T&T continued to have record title to the land over which the easement was located as well as the disputed property until it was all sold in a single parcel with other land to the Defendants in 2007.

Appellant makes reference to employee parking on the north side of the KFC building where the disputed property and the easement are located. It is important to note there is no customer parking on the north side of the building (CR P. 108). There are no parking spaces on the disputed property (CR P. 108). There is striping on the easement tract but Appellant did not and is not making a claim to the easement property (Plaintiff's Exhibit 7, CR P. 149; CR P. 108). There are no marked parking spaces whatsoever on the disputed property. All of the customer parking spaces appear on the south side of the building away from the disputed property on land which is clearly inside the boundaries of the .411 tract owned by Appellant (CR P. 108).

Appellant also introduced receipts for striping and parking lot maintenance. The location of the repairs and striping is not identified on any of the paperwork and we must remember that the only actual parking lot spaces are located on the south side of the building away from the disputed property.

The lawsuit that Appellant says that it filed against the Valero gas station for a gasoline spill migration was never put into evidence and there is no evidence that the disputed property was ever a part of any litigation (if such litigation ever existed) prior to the subject suit.

In 2007, the Defendants (Appellees) purchased from T&T Corporation a .546 acre tract that bordered the KFC .411 acre tract. Contrary to Appellants allegation, the creek was not the border between the two tracts (CR P. 108). To the contrary,

Appellees land bordered Appellants land on three sides (Defendant's Exhibit 1, CR P. 118).

Appellant did in fact file suit for adverse possession and injunctive relief to keep Appellee off of its own property until the suit could be tried (CR P. 14-16).

Plaintiff's Statement of Facts omits substantial testimonial evidence that the jury heard and considered when it found that (1) Plaintiff did not adversely possess the subject Property (also sometimes referred to herein as the "Property") for a period of ten (10) or twenty-five (25) years (CR P. 66, 68), and (2) Plaintiff's claims for adverse possession were groundless and brought in bad faith (CR P. 69). Deborah Parmalee, owner and president of Plaintiff, admitted Plaintiff never excluded anyone from the Property and Plaintiff's record property. The public could drive on the Property and Plaintiff's property without restriction (Supp. RR Vol. 1 P. 134; CR P. 100). Ms. Parmalee admitted that Defendant Stephen Greak could drive around the KFC building at any time of day or night without Plaintiff's objection (Supp. RR Vol. 1 P. 143-144). Ms. Parmalee also admitted Plaintiff never put up a "no-trespassing" sign on any of Plaintiff's property or the subject Property (Supp. RR Vol. 1 P. 154). Tonisha Santana, Plaintiff's former shift supervisor from 1999 through 2013, often saw customers of a nearby convenience store park in what she called Plaintiff's parking lot (Supp. RR Vol. 1 P. 163, 167), but which was really the easement tract through which Plaintiff and Defendant could drive for access from Chestnut Street to Timberland Dr. but not park

because it was a travel easement only (Supp. RR Vol. 1 P. 89-90). Ms. Santana acknowledged Plaintiff never posted an "employees only" sign because anyone was allowed to drive through the parking lot (Supp. RR Vol. 1 P. 167). Ms. Santana testified that Plaintiff never made an attempt to run anybody off from the parking lot surrounding the KFC restaurant, and Ms. Parmalee never told her to remove anyone from the KFC parking lot (Supp. RR Vol. 1 P. 167-168). Michael Tieman, a former employee of Plaintiff and general manager of the KFC restaurant from 2010 through 2013 (Supp. RR Vol. 1 P. 205), also admitted customers of the nearby convenience store would park in KFC's parking lot, but he never made anyone leave the premises (Supp. RR Vol. 1 P. 222-223). In fact, these convenience store customers were parking on the travel easement (Defendant's Exhibit 1, CR P. 118; CR P. 108). The actual parking lot with customer parking spaces for the KFC store is on the other south side of the building apart from the land Plaintiff is trying to adversely possess (CR P. 108, 89-90). Lucille Dewitt, owner of Tem-Kil, Inc., failed to provide any evidence that Tem-Kil, Inc.'s use of the property from 1981 to 1988 was exclusive or hostile to the public or to the record title owner (Supp. RR Vol. 1 P. 169-188).

Mike Parker as an officer of Everett Griffith, Jr. and Associates (surveying firm) stated that his company had surveys of all property the subject of this suit dating back to 1981 (Supp. RR Vol. 2 P. 29 L. 4-10). This same firm surveyed the entire tract that was bought by the Defendants in 2007 but actually surveyed a year earlier in

preparation for the sale in 2006 for T&T Corporation (Supp. RR Vol. 2 P. 31 L. 18-25). While performing the survey, the survey crew was visible on the property for any employee at the Kentucky Fried Chicken store to see. The crew was on the Property with instrument and prism poling while measuring, flagging, staking, and taping which would have been clearly visible for any employee of the Kentucky Fried Chicken store to see (Supp. RR Vol. 2 P. 34 L. 4-10). Ms. Parmalee admits she never made a move to exclude anyone form the property <u>ever</u> (Supp. RR Vol. 1 P. 134).

Thomas Darmstadter, developer and owner of Rainmaker Properties, helped negotiate and manage the sale of the .546 acre tract to Defendants from T&T Corporation in 2007 (Supp. RR Vol. 2 P. 11, 18). When Mr. Darmstadter furnished a plat of the property being offered for sale to Defendants in 2007, he had no reason to believe Plaintiff might be claiming an interest in the Property (Supp. RR Vol. 2 P. 23). Mr. Darmstadter never received any notice from Plaintiff of its claim to the Property (*Id.*). Mr. Darmstadter never saw any barriers or signs which would indicate an adverse claim to the Property (*Id.*). Mr. Darmstadter believed the public had access to the Property (Supp. RR Vol. 2 P. 23-24). Mr. Darmstadter did remember vagrants living in the nearby creek (Supp. RR Vol. 2 P. 24).

Ms. Parmalee admitted she never told the previous record owner of the Property prior to Defendants' purchase in 2007 that her corporation was taking or claiming the Property or that she thought the property was owned by her corporation (Supp. RR

Vol. 1 P. 134). Ms. Parmalee admitted that she would have never intentionally taken anything from the prior owner of the Property (Supp. RR Vol. 1 P. 136). Defendant Stephen Greak, partner in Defendant E&G Investments, before his conversations with Ms. Parmalee immediately prior to the lawsuit, never received any indication from Ms. Parmalee that she claimed ownership of the Property (Supp. RR Vol. 2 P. 62).

Ms. Parmalee neither attended the closing for the sale of the real property her parent's corporation purchased in 1981 nor saw the deed (or easement) her parents received for such real property (Supp. RR Vol. 1 P. 92). Ms. Parmalee did not attend the closing for the sale of the KFC business and real property from her parent's corporation to her Corporation, Nac-Tex, Hotel Inc. (Plaintiff) in 1998 (Supp. RR Vol. 1 P. 86, 124). Ms. Parmalee admitted she had "no idea" what real property her corporation legally acquired in 1998 other than what she saw on-site (Supp. RR Vol. 1 P. 124). Ms. Parmalee has been largely absent from the Property since she moved to Colorado in 1996 (Supp. RR Vol. 1 P. 82, 133). Ms. Parmalee admits she didn't buy the disputed property for $25,000.00 just before she commenced this suit because she was in a financial bind but now she isn't (Supp. RR Vol. 1 P. 108).

Plaintiff neither paid property taxes nor held a deed on the Property (CR P. 125; Supp. RR Vol. 1 P. 85). Tem-Kil, Inc., never paid property taxes on the Property (CR P. 125). Ms. Parmalee did not even know about the recorded easement her corporation acquired in 1998 which is adjacent to the disputed Property (Supp. RR Vol. 1 P. 75).

When Tem-Kil, Inc., acquired the KFC property in 1981, Mrs. Dewitt neither attended the closing nor reviewed closing documents, plats, or site plans (CR P. 94; Supp. RR Vol. 1 P. 176). When Tem-Kil, Inc., sold the KFC property to Plaintiff, Mrs. Dewitt neither went to the closing nor reviewed the deed (Supp. RR Vol. 1 P. 179-180). There are no meetings, corporate minutes, resolutions, notes, writings or communications of any kind to indicate either of these corporations intended to adversely possess anything (Supp. RR Vol. 1 P. 121-123). Both Dewitt and Parmalee freely admit they never notified anyone at any time prior to this suit by any means regarding an adverse possession claim. Ms. Parmalee understood that Mr. Temple's corporation owned the property and that Defendants bought the land and that she simply changed neighbors when the property was sold to Defendants in 2007 (Supp. RR Vol. 1 P. 109-110). Ms. Parmalee says her corporation was drawn up so a meeting could be a conversation at the dinner table (Supp. RR Vol. 1 P. 121).

Ms. Parmalee admits that the bridge work and dirt work were done by her parents in the rear of the new building because her parents added a drive thru window when the new building was constructed in 1983 and the customers then had to circle the building. In fact, Tem-Kil created their own crisis (see building site plan CR P. 111; Supp. RR Vol. 1 P. 111, 118 L. 5). Ms. Parmalee admits that the tract her corporation is claiming to adversely possess has grown from a triangle in her original petition to a larger tract (4-sided figure) just before trial (Supp. RR Vol. 1 P. 116).

Mrs. Dewitt says her deceased husband did all the real estate deals. She did zero and that Richard Dewitt ran KFC (Supp. RR Vol. 1 P. 175). "All I did was listen to my husband" (Supp. RR Vol. 1 P. 176). Mrs. Dewitt didn't go to any closing, didn't see the deed when Tem-Kil purchased the .411 acres from T&T Corporation in 1981, didn't look at the plat, didn't look at the site plan for the new building, didn't know Tem-Kil had an easement, and didn't see the deed from Tem-Kil to Nac Tex Hotel, Inc., or even know how much Debbie (Nac Tex Hotel, Inc.) paid for the KFC store (Supp. RR Vol. 1 P. 181). Mrs. Dewitt doesn't know if Tem-Kil fixed the dirt in back of the building or if the landlord Arthur Temple (T&T) did it (Supp. RR Vol. 1 P. 183). Mrs. Dewitt didn't take care of paperwork or go to the Lufkin store much (Supp. RR Vol. 1 P. 183). Mrs. Dewitt says all corporate records of Tem-Kil were destroyed (Supp. RR Vol. 1 P. 184). Mrs. Dewitt doesn't know anything about any deed to the disputed property. She just doesn't think her husband would have made a mistake (Supp. RR Vol. P. 187).

## SUMMARY OF THE ARGUMENT

Plaintiff did not meet its burden at trial to prove each element of its adverse possession claim required by the Texas Civil Practice and Remedies Code §16.021 et seq. (Vernon 2014). The jury considered substantial evidence that Plaintiff's claim to the Property was neither exclusive nor hostile. The jury considered evidence Plaintiff lacked the requisite intent or any intent for that matter to claim the Property as its own

and that Plaintiff and Tem-Kil, Inc., never paid property taxes on the Property. In addition to the foregoing evidence, the jury, in their finding that Plaintiff's adverse possession claim was groundless and brought in bad faith, also considered evidence that Plaintiff and Tem-Kil, Inc.'s beliefs that they owned the Property were blissful and displayed intentional disregard of their record property. Further, there was evidence Defendants met the notice and claim requirements of TEX. CIV. PRAC. & REM. ANN. § 16.034, thus entitling Defendants to the court's award of attorney's fees (Defendant's Exhibit 3, CR P. 119).

## ARGUMENT AND AUTHORITIES

**STANDARD OF REVIEW**

A party who attacks the legal sufficiency of an adverse finding on an issue on which that party has the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that is clearly wrong and unjust. *Id.* at 242.

The final test for legal sufficiency must always be whether the evidence at trial

would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Whether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* The reviewing court should be mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 819. When reasonable jurors could resolve conflicting evidence either way, reviewing courts must assume that jurors resolved all conflicts in accordance with the verdict. *Id.* at 819. When the evidence reasonably supports conflicting inferences, the court must assume jurors made all inferences in favor of the verdict, and must disregard all other inferences. *Id.* at 821.

**I.     The district court did not err in rendering judgment in Defendants' favor on the jury finding that Plaintiff did not adversely possess the Property for a period of ten (10) or twenty-five (25) years**

**A.     The jury considered substantial evidence that Plaintiff's claim to the Property was neither exclusive nor hostile**

To establish adverse possession, the possession must be an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person. TEX. CIV. PRAC. & REM. ANN. § 16.021 (Vernon 2014). The possession must indicate unmistakably an

assertion of a claim of <u>exclusive ownership</u> in those claiming title by adverse possession. *Blaylock v. Holland*, 396 S.W.3d 720, 723 (Tex. App.—Dallas 2013, no pet.) (emphasis added) (intention to claim property as one's own must be to the exclusion of all others). Mere use, no matter how long continued will not satisfy the requisites of adverse possession. *Davis v. Carriker*, 536 S.W.2d 246, 250 (Tex. Civ. App.—Amarillo 1976, writ ref'd n.r.e.). The use must be adverse and hostile. *Id.* The failure to prove exclusive use is fatal to the establishment of title by adverse possession. *Id.* at 251. Thus, when a record owner allows others to enter and use the disputed property, and the adverse possessor does not resist or exclude the intruders, the possession ceases to be exclusive and the period of adverse possession terminates. *See McNeely v. Southwestern Settlement & Dev. Corp.*, 282 S.W.2d 932, 939 (Civ. App.—Beaumont 1955, no writ).

Joint use of the property with the record title holder is not enough, as shared use is not inconsistent with or hostile to the record title holder's ownership. *Tran v. Macha*, 213 S.W.3d 913, 914-15 (Tex. 2006); *See, e.g., Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979). Adverse possession is not about who uses the property more or for better purposes; it is about whether one party ousts another from his legally held land. *See Kleckner v. McClure*, 524 S.W.2d 608, 612-613 (Tex. Civ. App.—Fort Worth 1975, no writ). Exclusive possession is required. *Id.*

Several witnesses testified that the parking lot of the KFC restaurant and the subject Property was not only open to the public, but also to the Defendants and the prior owner of Plaintiff's and Defendants' properties. Plaintiff never removed anyone from the Property (Supp. RR Vol. 1 P. 134, 167-168). Plaintiff never erected a "no-trespassing" sign on the Property (Supp. RR Vol. 1 P. 167; Supp. RR Vol. 2 P. 23). Plaintiff's owner, Plaintiff's employees, and others frequently observed non-customers using the KFC premises without objection (Supp. RR Vol. 1 P. 134, 167, 222, Supp. RR Vol. 2 P. 23-24). Ms. Parmalee never gave notice to anybody, including Defendants, of Plaintiff's intent to appropriate the Property (Supp. RR Vol. 1 P. 134; Supp. RR Vol. 2 P. 23, 62). Plaintiff's involvement with the Property was limited to a mere shared use, which is not considered an exclusive use. *See Brooks* at 673. Ms. Parmalee admitted Defendant Stephen Greak and the prior owner of the Property could drive around Plaintiff's KFC building at any time without Plaintiff's objection (Supp. RR Vol. 1, P. 134, 143-144). Mrs. Dewitt failed to provide any testimony that Tem-Kil, Inc.'s use of the property from 1981 to 1988 was exclusive or hostile to the public or the record title owner (Supp. RR Vol. 1 P. 169-188). Even though Plaintiff's fast food business may have used the Property more than Defendants or the previous record title owner, an adverse possession claim is not determined by which party used the property more or for better purposes, it is determined by whether one party wholly excludes another party from the land. *See Kleckner* at 612-613. Plaintiff and its

predecessor did not wholly exclude Defendants and others from the Property for the statutory periods.

### B. The jury considered evidence Plaintiff lacked the requisite intent to claim the Property as its own

The intention of the possessor of land to claim it as his own is an essential element of adverse possession and in the absence of such intention the possessor cannot mature a limitation title claim to land belonging to another. *Davis v. Breithaupt*, 400 S.W.2d 390, 393 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.). The *Breithaupt* court held that the adverse claimant, who testified that he thought the disputed tract was included in his deed yet it was never his intention to take anyone else's land, judicially admitted he did not possess the intent necessary to ripen a limitation title. *Id.*

The testimony of a party that is contrary to the party's position must also be given conclusive effect and is treated as a judicial admission if (1) the declaration was made during a judicial proceeding, (2) the declaration is contrary to an essential fact embraced in the theory of recovery or defense asserted by the party giving the testimony, (3) the declaration is deliberate, clear, and unequivocal, (4) giving the declaration conclusive effect is consistent with the public policy on which the rule is based, and (5) the statement is not also destructive of the opposing party's theory of recovery. *Mendoza v. Fidelity & Guaranty Ins.*, 606 S.W.2d 692, 694 (Tex. 1980). A

judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it. *Id.*

Ms. Parmalee judicially admitted she never would have taken anything from the prior owner of the Property (Supp. RR Vol. 1 P. 136), who owned the Property until 2007 (CR P. 125). This statement (1) was made during trial, (2) is contrary to the essential fact of intent in Plaintiff's adverse possession theory of recovery, (3) was deliberate, clear and unequivocal, and (4) is not also destructive of Defendants' theory of recovery for adverse possession. *See Mendoza* at 694. Further, there is no reason why giving the statement conclusive effect is inconsistent with the public policy on which the rule of judicial admission is based. *Id.* Ms. Parmalee never told the prior owner of the Property that her corporation was taking the Property or that she thought the Property was owned by Plaintiff (Supp. RR Vol. 1 P. 134). Ms. Parmalee judicially admitted Plaintiff lacked the intent to claim the Property as its own. Without such intention, Plaintiff could <u>not</u> have matured a limitation title to the Property. *See Breithaupt* at 393. Further, Ms. Parmalee and Mrs. Dewitt indicated their respective corporate documentation had no record of their corporations' intent to adversely possess the Property (Supp. RR Vol. 1 P. 121-122, 184).

## C. The jury considered evidence that Plaintiff and Tem-Kil, Inc., never paid property taxes on the Property

Neither Plaintiff nor Tem-Kil, Inc., ever paid property taxes on the Property (CR P. 125). Although payment of taxes is not necessary to support ten year limitation title, failure to do so after the expiration of that period is significant evidence that no adverse claim is being made. *Carriker* at 251. Accordingly, the jury's finding implied this evidence, *inter alia*, as significant to decide Plaintiff did not adversely possess the Property.

Given the above evidence, the jury was entirely reasonable in finding Plaintiff did not adversely possess the Property. The reviewing court must be mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller* at 819. Because there is evidence to support the jury's implied finding that Plaintiff's claim to the Property was neither exclusive nor hostile, Plaintiff judicially admitted that it never intended to take the Property from the Property's prior owner, and Plaintiff and Tem-Kil, Inc., never paid taxes on the Property, the court should conclude that there was legally and factually sufficient evidence to support the jury's finding. *See Walker & Assocs. Surveying, Inc. v. Austin*, 301 S.W.3d 909, 916-17 (Tex. App.—Texarkana 2009, no pet.).

## II. The district court did not err in rendering judgment for Defendants on the jury finding that Plaintiff filed the lawsuit in bad faith

Plaintiff argues there is no evidence to support the jury's finding that Plaintiff filed the lawsuit in bad faith (Appellant's Brief P. 7). The jury considered ample

evidence on which to base their finding that Plaintiff's adverse possession claim was groundless and made in bad faith (CR P. 69). In addition to the substantial evidence cited herein which shows (1) Plaintiff's adverse possession claim was neither exclusive nor hostile, (2) Plaintiff lacked the requisite intent to claim the Property, and (3) neither Plaintiff nor Tem-Kil, Inc., ever paid property taxes on the Property, the jury also considered testimony from the owners of Plaintiff and Tem-Kil, Inc., which showed their belief that they owned the Property was not an honest mistake but rather a blissful and intentional disregard of their record property.

Ms. Parmalee did not attend the closing for the sale of the real property her parent's corporation purchased in 1981 and she never saw the deed that her parents received for such real property (Supp. RR Vol. 1 P. 92). Ms. Parmalee did not attend her own closing for the purchase of the KFC business and real property from her parent's corporation to Nac Tex Hotel, Inc. in 1988 (Supp. RR Vol. 1 P. 86, 124). Ms. Parmalee admitted she had "no idea" which real property her corporation legally acquired in 1988 other than what she saw in person (Supp. RR Vol. 1 P. 124). Ms. Parmalee has lived in Colorado since 1996 (Supp. RR Vol. 1 P. 82). Ms. Parmalee did not even know about the recorded easement that her corporation, Nac Tex Hotel, Inc., acquired which was adjacent to the disputed Property or that it even existed prior to 2012 (Supp. RR Vol. 1 P. 75). When Tem-Kil, Inc., acquired the KFC property in 1981, Mrs. Dewitt did not attend the closing nor did she review closing documents,

plats, or site plans (Supp. RR Vol. 1 P. 176, 179-180, CR P. 94). When Tem-Kil, Inc., sold the KFC property to Plaintiff, Mrs. Dewitt did not got to that closing nor did she review the deed (Supp. RR Vol. 1 P. 179-180). These facts, coupled with Plaintiff's failure to prove several elements of the adverse possession statute, were sufficient evidence for the jury to find that Plaintiff brought this groundless lawsuit in bad faith. When the court finds that the person unlawfully in actual possession made an adverse possession claim that was groundless and in bad faith, the court shall award costs and reasonable attorney's fees to the prevailing party. TEX. CIV. PRAC. & REM. ANN. § 16.034(a)(1) (Vernon 2014). Accordingly, the jury awarded Defendants' reasonable attorney's fees in the amount of $49,000 (CR P. 70) and the court included the attorney's fees award in its Judgment (CR P. 79-80).

### III. The district court did not err in rendering judgment for Defendants on the jury finding that Defendants are entitled to an award of attorney's fees under TCPRC § 16.034

TEX. CIV. PRAC. & REM. ANN. § 16.034(a)-(b) (Vernon 2014) is copied below:

(a) In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court:

> (1) shall award costs and reasonable attorney's fees to the prevailing party if the court finds that the person unlawfully in actual possession made a claim of adverse possession that was groundless and made in bad faith; and
> (2) may award costs and reasonable attorney's fees to the prevailing party in the absence of a finding described by Subdivision (1).

(b) To recover attorney's fees, the person seeking possession must give the person unlawfully in possession a written demand for that person to vacate the premises.

> The demand must be given by registered or certified mail at least 10 days before filing the claim for recovery of possession.

Despite the fact that Plaintiff admitted it was in possession of the Property (Supp. RR Vol. 1 P. 72), it filed its Original Petition and Request for Injunctive Relief on October 22, 2012 (CR P. 14). As soon as Plaintiff filed this lawsuit, it was impossible for Defendants to serve a written notice to vacate ten days before filing a claim for recovery of possession of the Property because a claim had already been filed by Plaintiff. Defendants should not be compelled by Tex. Civ. Prac. & Rem. Ann. § 16.034(a)-(b) to file a counterclaim on the same adverse possession issue. Plaintiff sought the adverse possession claim and assumed the burden of proof. *Dow Chem.* at 241-242; TEX. CIV. PRAC. & REM. ANN. § 16.021 (Vernon 2014).

Defendants served their written notice to vacate the Property to Plaintiff on November 30, 2012, the same day they filed their Original Answer (CR P. 35, 119). To hold Defendants are not entitled to attorney's fees because Defendants did not send a written notice to vacate ten days before <u>Plaintiff</u> filed this lawsuit would frustrate the purpose of the statute. The statute contemplates that the party seeking possession would file the lawsuit. In this case, the party in possession filed the lawsuit. Defendants, and all future similarly situated parties, would be unfairly precluded from recovering attorney's fees just because the party in possession raced to the courthouse and filed a lawsuit before the party seeking possession. It would require Defendants

and all similarly situated parties to use telepathy to discover when the adverse claimant will file a claim. The only recourse Defendants and similarly situated parties have, after the party in possession files a lawsuit, is to timely file their answer and serve a written notice to vacate.

Assuming, *arguendo*, that Defendants made their "claim" as contemplated by Tex. Civ. Prac. & Rem. Ann. § 16.034(b) when they filed their Original Answer and especially their supplemental answer (CR P. 58), it would be unjust for the court to then hold that Defendants should have sent their written notice to vacate ten days before filing an answer. The statute should be interpreted to only require the party who files the lawsuit to send a written notice to vacate <u>before</u> filing a lawsuit.

## CONCLUSION AND PRAYER

Plaintiff did not meet its burden at trial to prove each element of its adverse possession claim as the jury considered substantial evidence that Plaintiff's claim to the Property was neither exclusive nor hostile. The jury also considered evidence that Plaintiff lacked the requisite intent to claim the Property as its own and that Plaintiff and Tem-Kil, Inc., never paid property taxes on the Property. The jury, in their finding that Plaintiff's adverse possession claim was groundless and brought in bad faith, also considered evidence that Plaintiff and Tem-Kil, Inc.'s beliefs that they owned the Property were blissful and in intentional disregard of their record property. Further, there was evidence Defendants met the notice and claim requirements of TEX. CIV.

PRAC. & REM. ANN. § 16.034, thus entitling Defendants to the court's award of attorney's fees. The jury's findings in the foregoing matters were not against the great weight and preponderance of evidence at trial. *See Dow Chem.* at 242. Even though Plaintiff may have presented contrary evidence, the reviewing court should be mindful that the jury is sole judge of the credibility of witnesses and weight given their testimony. *See City of Keller* at 819.

WHEREFORE, PREMISES CONSIDERED, Appellees, respectfully pray that this Court affirm the Trial Court's Judgment in its entirety and for such other and further relief to which Appellees may show themselves justly entitled at law or in equity.

Respectfully submitted,

Jimmy A. Cassels, SBN 03978200
Cassels & Reynolds, L.L.P.
117 E. Lufkin Ave.
P.O. Box 1626
Lufkin, Texas 75902-1626
Tel. (936) 634-8466
Fax (936) 639-1939
jacassels@consolidated.net
ATTORNEY FOR APPELLEES

## CERTIFICATE OF SERVICE

The undersigned attorney of record hereby certifies that a true and correct copy of the foregoing document has been filed with the clerk of the Twelfth Court of Appeals in accordance with the Texas Rules of Appellate Procedure and served on the following counsel of record on the _19th_ day of January, 2015.

_____
Jimmy A. Cassels

## CERTIFICATE OF COMPLIANCE

I hereby certify on this date that the foregoing document contains 5,453 words.

_____
Jimmy A. Cassels